**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

PARKER WAICHMAN LLP,

    **Plaintiff**,

          **v.**

SALAS LC, *et al.*,

    **Defendants.**

**Civil No.** 16-1333 (FAB)

**OPINION AND ORDER**[1]

BESOSA, District Judge

    Before the Court is defendants John F. Nevares and Associates, P.S.C. ("Nevares")'s, Salas LC ("Salas")'s, and Eric J. Quetglas-Jordan d/b/a Quetglas Law Firm ("Quetglas")'s[2] motion to dismiss plaintiff Parker Waichman LLP ("Parker")'s second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket No. 125.)  For the reasons set forth below, defendants' motion is **DENIED**.

**I.   BACKGROUND**

    Parker alleges that it, as the successor to Parker Waichman Alonso LLP ("Parker Waichman Alonso"), is entitled to relief

---

[1] Olivia Manne, a second-year student at Columbia Law School, assisted in the preparation of this Opinion and Order.

[2] Quetglas filed a motion for joinder regarding the motion to dismiss.  (Docket No. 129.)

pursuant to a contract with defendants Salas, Nevares, and Quetglas. (Docket No. 93.)

Plaintiff and defendants executed a contract[3] titled "Confidential Operating Agreement for Plaintiff Attorney Group in Caribbean Petroleum Oil and Fire Litigation" ("CAPECO Agreement"). Id. at p. 2. Parker Waichman Alonso is a party to the contract. (Docket No. 125-1 at pp. 2 and 5.) Parker is the successor to Parker Waichman Alonso LLP. (Docket No. 93 at p. 1.) All parties to the CAPECO Agreement are legal entities "dedicated to the practice of law." Id. The parties to the CAPECO Agreement agreed to prosecute collectively for clients, bringing claims arising out of an explosion and subsequent fire that occurred on October 23, 2009 at the Caribbean Petroleum Corporation, an oil refinery and depot in Bayamon, Puerto Rico. Id. at pp. 2-3. The CAPECO Agreement stipulated that all parties would participate on behalf of, and cooperate with, one another to the benefit of the clients. Id. at p. 3. Parker Waichman Alonso agreed to advance the "[c]apital expenditures necessary to fund the prosecution of the

---

[3] Becnel Law Firm LLC ("Becnel") and Douglas and London ("Douglas") were also parties to the CAPECO Agreement, but they are not parties to this dispute. (Docket No. 125-1 at p. 2.)

actions on behalf of the clients of the group [i.e. plaintiff and defendants.]" [4]  (Docket No. 125-1 at p. 2.)

The CAPECO Agreement provides for an ordered process of distributing attorney's fees resulting from the underlying litigation.  Id.  The parties to the CAPECO Agreement agreed to prioritize the reimbursement of member firms' capital expenditures.  Id.  Next, they agreed to allocate fees to reimburse out of pocket expenses "not for specific cases."  Id.  The parties agreed to distribute the remaining fees among themselves equally. Id.

Pursuant to the CAPECO Agreement, Parker allegedly invested $188,586.50 in capital expenditures necessary to prosecute the clients' claims.  (Docket No. 93 at p. 3.)  Parker also "invested a substantial amount of 'man hours' in attorneys and paralegal time" to prosecute the claims contemplated by the CAPECO Agreement. Id.  Parker alleges that it fully complied with all of its obligations under the CAPECO Agreement at all times.  Id. at p. 4.

Later, defendants unilaterally terminated the CAPECO Agreement.  Id.  The CAPECO Agreement did not permit unilateral termination but rather, provided for termination upon a vote of

---

[4] Becnel and Douglas also agreed to advance capital expenditures to fund the prosecution.  (Docket 125-1 at p. 2); (Docket No. 93 at p. 3.)

all signatories.  Id.  After terminating the contract with Parker,
defendants allegedly have or will receive "substantial sums in
compensation to the damages claimed by the clients." Id. at p. 5.
Defendants have allegedly refused to pay Parker either to reimburse
capital expenditures or to compensate net attorney's fees.  Id.
Defendants have allegedly breached their obligations by
distributing attorney's fees among themselves without considering
all contracting parties.  Id.

In a second amended complaint against Salas, Nevares, and
Quetglas, Parker seeks the following relief:  (1) specific
performance of the CAPECO Agreement, (2) rescission of the CAPECO
Agreement, (3) recovery under the doctrine of *quantum meruit*, and
(4) attorney's fees and prejudgment interest due to the defendants'
obstinacy in prosecuting the Parker's claims.  (Docket No. 93.)

Defendants filed a motion to dismiss, Docket No. 125, Parker
opposed, Docket No. 131, and Nevares replied, Docket No. 139.  The
moving defendants argue that the Court should dismiss Parker's
claims against them because:  (1) Parker is not a signatory to the
CAPECO Agreement and, thus, cannot claim anything pursuant to it;
(2) the CAPECO Agreement is unenforceable; (3) the doctrine of
*exceptio non adimpleti contractus* precludes Parker from compelling
specific performance of the CAPECO Agreement; and (4) the *quantum
meruit* claim is time barred.  (Docket No. 125.)

## II. **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Resolving a motion to dismiss requires a two-step approach. First, a Court "isolate[s] and ignore[s] statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012). Second, a Court "take[s] the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see[s] if they plausibly narrate a claim for relief." Id. "The relevant question for a district court in assessing plausibility is not whether the complaint makes any particular factual allegations but, rather, whether 'the complaint warrant[s] dismissal because it failed *in toto* to render plaintiffs' entitlement to relief plausible.'" Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 55 (1st Cir. 2013) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 569 n.14 (2007).

**III. DISCUSSION**

    **A.    Signatories to the CAPECO Agreement**

        Parker seeks relief pursuant to the CAPECO Agreement, which was executed by a signatory different from it. Pursuant to Article 1209 of the Puerto Rico Civil Code, only contracting parties can bring actions that arise out of a contract. P.R. Laws Ann. tit. 31, § 3374 ("Contracts shall only be valid between the parties who execute them and their heirs."); see also Torres v. Bella Vista Hosp., Inc., 523 F. Supp. 2d 123, 152 (D.P.R. 2007) (McGiverin, J.). For this reason, defendants argue that Parker cannot bring claims pursuant to the CAPECO Agreement, which was signed by Parker Waichman Alonso, not by Parker. (Docket No. 125 at p. 7.)

        Parker, however, can claim that it is a party to the CAPECO Agreement signed by Parker Waichman Alonso. In considering a motion to dismiss, a Court may consider additional documents, such as official public records. Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993) (in a motion to dismiss, courts make exception for certain documents including those that are "official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint"). Parker submitted two official public documents to the Court showing that "Parker Waichman Alonso LLP" changed its official entity name and

registration to "Parker Waichman LLP" on February 27, 2012. (Docket Nos. 18-1 and 18-2.) In addition, the second amended complaint includes a clear statement that Parker is the successor to Parker Waichman Alonso. (Docket No. 93 at p. 1.) The motion to dismiss does not acknowledge this. (Docket No. 125 at p. 7.) The moving defendants merely refer the Court to the CAPECO Agreement as proving that Parker is not a signatory to it. <u>Id.</u> The stability of contracts would be eviscerated if a party to a contract could, as defendants suggest, be dismissed from all obligations and claims under a contract by merely changing its name.

Defendants do not develop any legal argument for their charge that Parker cannot recover pursuant to the CAPECO Agreement, which was executed under its former name. Defendants failed to provide the Court with any controlling legal authority to support their argument. The Court is under no obligation to create legal arguments for the parties before it. <u>U.S. v. Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990) (A party may not merely "mention a possible argument in the most skeletal way, leaving the Court to do the counsel's work, create the ossature for the argument, and put flesh on its bones.") The Court will not dismiss a case pursuant to Rule 12(b)(6) based on groundless conjecture that is devoid of legal argument.

It can be inferred from the second amended complaint and the CAPECO Agreement that the parties treated Parker as a party to the agreement signed under its previous name.  Parker alleges that it continued fulfilling its obligations under the contract after the firm changed its name. (Docket No. 93 at p. 4.)  The complaint states:  "[a]t all relevant times, Parker Waichman LLP fully complied with all of its obligations under the CAPECO Agreement, including those towards the . . . defendants." Id.  The contract included a confidentiality clause in which the parties agreed that their work "be kept strictly confidential and not disclosed to anyone other than the attorney and firms belonging to the Group." (Docket No. 125-1 at p. 3.)  Parker, therefore, continued to fulfill its obligations with the defendants under a contract that explicitly limited participation to parties to the agreement.

For those reasons, Parker has sufficiently shown that the firm is a party to the contract in order to survive a motion to dismiss.

**B.** *Exceptio non adimpleti contractus*

The Puerto Rico Civil Code implicitly includes the doctrine of *exceptio non adimpleti contractus*. FDIC v. Empresas Cerromonte Corp., No. 10-1623, 2013 U.S. Dist. LEXIS 138794, at *15 (D.P.R. May 29, 2013) (López, M.J.) ("the doctrine of *exceptio non adimpleti contractus* [is] implicit within the Puerto Rico Civil

Code"). Under this doctrine, "the plaintiff may not sue if the plaintiff's own obligations have not been performed." Black's Law Dictionary 682 (10th ed. 2014); See also Waterproofing Sys., Inc. v. Hydro-Stop, Inc., Civ. No. 04-2218, 2006 U.S. Dist. LEXIS 98605, 2006 WL 6561411, at *13 (D.P.R. June 2, 2006) (Velez-Rive, M.J.) ("once a party fails to fulfill its obligations under the contract, the other party is no longer bound to comply with its own obligations"); FDIC, No. 10-1623, 2013 U.S. Dist. LEXIS 138794, at *15 (D.P.R. May 29, 2013) (López, M.J.) (the doctrine is an affirmative defense when a noncomplying party asks the Court to enforce the other party's compliance.).

Dismissal here is not warranted under the *exceptio non adimpleti contractus* doctrine. The appearing defendants argue that Parker is estopped from enforcing the contract because it "failed to allege that it complied with the central obligation of the [a]greement." (Docket No. 125 at p. 13.) This is not the case. The second amended complaint includes clear statements that Parker fully complied with its obligation under the CAPECO Agreement. (Docket No. 93 at pp. 3-4.) The second amended complaint reads: "At all relevant times, plaintiff Parker Waichman LLP, fully complied with all of its obligations under the CAPECO Agreement, including those towards the clients encompassed by it and towards the remaining parties." Id. at p. 4. In deciding

this motion to dismiss, the Court must accept the validity of these factual allegations. San Gerónimo Caribe Project, Inc. v. Acevedo-Vilá, 687 F.3d 465, 471 (1st Cir. 2012) (the Court must "assume as true the plaintiff's 'well-pleaded factual allegations' contained in the complaint.") (quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009)); see also Vega-Encarnacion v. Babilonia, 344 F.3d 37, 41 (1st Cir. 2003) ("when deciding a motion to dismiss on the merits, a district court is obliged to accept the factual allegations contained in the complaint as true").  After accepting the factual allegations in the second amended complaint as true, as the Court must in a motion to dismiss, the Court finds that plaintiff Parker has sufficiently shown that it complied with its contractual obligations in the CAPECO Agreement.  The doctrine of *exceptio non adimpleti contractus* is not a bar to relief here.

## C.   Attorney's fees agreement in violation of Model Rule 1.5(e)

The major issue before the Court on this motion to dismiss concerns whether the Court will enforce a contract between law firms that violates the Model Rules of Professional Conduct ("Model Rules").  The ABA is not legally binding on practitioners "[a]bsent promulgations by means of a statute or a court rule." Culebra Enterprises Corp. v. Rivera-Rios, 846 F.2d 94, 98 (1st

Cir. 1988) (citing International Electronics Corp. v. Flanzer, 527

F.2d 1288, 1293 (2d Cir. 1975). Puerto Rico has adopted the Model

Rules. Culebra Enterprises, 846 F.2d 94, 98 (1st Cir. 1988).

Local Rule 83E of the United States District Court for the District

of Puerto Rico states:

> In order to maintain the effective administration of
> justice and the integrity of the Court, each attorney
> admitted or permitted to practice before this Court
> shall comply with the standards of professional conduct
> required by the Model Rules of Professional Conduct (the
> 'Model Rules'), adopted by the American Bar Association,
> as amended. Attorneys who are admitted or permitted to
> practice before this Court are expected to be thoroughly
> familiar with the Model Rules' standards.

Local Rule 83E. The applicable rules of ethical conduct in Puerto

Rico are, therefore, the Model Rules. Southwire Co. v. Ramallo

Bros. Printing, Inc., No. 03-1100, 2009 U.S. Dist. LEXIS 116631,

at *23 (D.P.R. Dec. 15, 2009) (Gelpi, J.).

Pursuant to Model Rule 1.5(e), there are three elements

for a valid fee arrangement between lawyers of different firms:

(1) the fee must either be divided in proportion to the services

performed, or each lawyer assumes joint responsibility; (2) the

client agrees in writing to the fee arrangement, including each

lawyer's share of the fee; and (3) the fee is reasonable. (Docket

No. 125-2 at p. 1.) The moving defendants argue that the contract

is unenforceable because it violates Model Rule 1.5(e)(1) and Model

Rule 1.5(e)(2). (Docket No. 125 at pp. 7-13.)

### 1.    Model Rule 1.5(e)(1)

Defendants' argument for dismissal rests in part on stipulations that are inconsistent with the requirements for a valid fee arrangement pursuant to Model Rule 1.5(e)(1). Defendants argue for dismissal because Parker states a claim to an equal share of attorney's fees without alleging that it worked equally in the underlying litigation. Id. at p. 8. Defendants' argument, however, relies on a selective understanding of the Model Rule. Pursuant to Model Rule 1.5(e)(1), lawyers of different firms may divide a fee if "the division is in proportion to the services performed by each lawyer, **or each lawyer assumes joint responsibility for the representation.**" (Docket No. 125-2 at p. 1) (emphasis added). For this reason, it is necessary to determine whether the contracting parties agreed to share attorney's fees equally based on equal work on the underlying litigation, or whether each firm assumed joint responsibility for the representation.

The CAPECO Agreement appears to condition the equal division of fees on the parties' assumption of joint responsibility for their clients. The contract reads in pertinent part: "[i]t is the intent and purpose of this agreement that members of the Group shall commit to actively participate on plaintiffs' behalf in the Litigation and shall fully cooperate with one another for

the common benefit of plaintiffs." (Docket No. 125-2 at p. 1.)

The contract subsequently reiterates that "[s]ince the members of

the Group represent all plaintiffs collectively, the members of

the Group hereby acknowledge and agree that all such clients to

date have benefitted, and will continue to benefit, from the legal

services and expenditures of the Group and its members." Id. at

p. 3. After analyzing the issue in the light most favorable to

the plaintiff, as the Court must when considering a motion to

dismiss, the Court concludes that the clear language of the CAPECO

Agreement supports the view that the parties intended to assume

joint responsibility for their clients. Parker's complaint is not

necessarily in contravention of Model Rule 1.5(e)(1) for failing

to allege that the parties worked equally on the underlying

litigation. Dismissal is not proper on these grounds.

        Defendants have no other basis for demanding that

Parker's claim be dismissed for not alleging that it worked equally

on the underlying litigation. Pursuant to Article 1044 of the

Civil Code of Puerto Rico, contractual obligations "have legal

force between the contracting parties, and must be fulfilled in

accordance with their stipulations." P.R. Laws Ann. tit. 31,

§ 2994; see also In re Alvarez, 458 B.R. 645, 654 (Bankr. D.P.R.

2011) (the Puerto Rico Civil Code "holds parties to strict

compliance with the terms of their bargain."). Defendants appear

to develop an argument grounded in their regret rather than on

terms of the CAPECO Agreement.  They urge the Court to note that

they did most of the work on the underlying litigation.  (Docket

No. 125 at p. 8.)  The contracting firms did not condition equally

sharing the fee on equally working on the underlying litigation.

(Docket No. 125.)  The firms agreed to "commit to actively

participate on plaintiffs behalf" and to "fully cooperate with one

another for the common benefit of plaintiffs."  (Docket No. 125-1

at p. 1.)  In return, the contracting parties agreed on a tiered

distribution of "[a]ll fees earned or awarded from any of the

Group's clients." Id. at p. 2.  Section I of the CAPECO Agreement

stipulates that "[a]ll fees earned or awarded from any of the

Group's clients will be shared equally by all six (6) member firms

of the group as indicated in Section II." Id.  Section II states

> There shall be no distribution of fees until the out of
> pocket expense and capital contribution of the member
> firms has been completely reimbursed.  Capital
> contributions of the member firms will be reimbursed
> first.  Out of pocket expenses that are not for specific
> cases will be reimbursed next.  Thereafter, all fees
> will be shared equally as set forth above with
> disbursements handled pursuant to the retainer with the
> clients.

Id.  The CAPECO Agreement's clear terms demonstrate that the

parties did not intend for all member firms to work equally in

order to be entitled to an equal share in the remaining attorney's

fees.  Defendants' argument for dismissal, thus, fails.  See

Article 1233 of the Puerto Rico Civil Code.  ("If the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed"); P.R. Laws Ann. tit. 31, § 3471; see also Borschow Hosp. & Med. Supplies v. Cesar Castillo Inc., 96 F.3d 10, 15 (1st Cir. 1996) (noting that courts have interpreted article 1233 "to be 'strict in its mandate that courts should enforce the literal sense of a written contract, unless the words are somehow contrary to the intent of the parties") (quoting Hopgood v. Merrill Lynch, Pierce, Fenner & Smith, 839 F. Supp. 98, 104 (D.P.R. 1993) (Pieras, J.)).  A valid contract does not transform into an unenforceable agreement merely because a party regrets its obligations under it. Defendants' argument for dismissal based on plaintiff being a non-signatory to the CAPECO Agreement is **DENIED**.

**2.   Model Rule 1.5(e)(2)**

It is clear that the parties failed to comply with their obligations pursuant to Model Rule 1.5(e)(2).  Neither Parker nor defendants claim to have notified their clients of the agreement or obtained the clients' consent.  Nor did they. (Docket Nos. 93 and 125.)  Further, the CAPECO Agreement includes a confidentiality clause that requires that the terms of the agreement, and thus the fee arrangement, "be kept strictly confidential and not disclosed to anyone other than the attorneys

and firms belonging to the Group."  (Docket No. 125-1 at p. 3.)
For this reason, assessing defendants' motion to dismiss requires
the Court to determine whether it will enforce a contract that
violates Model Rule 1.5(e).  This is a matter of first impression
in this district.   This Court has expressly adopted the Model
Rules, but here the rule is not dispositive.   The Preamble and
Scope of the ABA Model Rules of Professional Conduct notes that
courts are divided on the issue of enforcing agreements among
lawyers that violate the Model Rules.  <u>Preamble and Scope, Ann.</u>
<u>Mod. Rules Prof. Cond. Preamble and Scope</u>, (2015).

    Defendants urge the Court to adopt the strict view
and refuse to enforce a contract that violates the Model Rules.
(Docket No. 125 at pp. 9-13).   Courts that adopt the strict
approach will not enforce agreements that violate ethical rules
because they refuse "to be made an instrument of enforcing
obligations arising out of an agreement that is against public
policy, either in law or in equity."  <u>Gagne v. Voccaro</u>, 766 A.2d
416 (Conn. 2001);   <u>see also</u> <u>Christensen v. Eggen</u>, 577 N.W.2d 221
(Minn. 1998) (court held a fee-splitting agreement between lawyers
of different firms that violated Model Rule 1.5(e) as unenforceable
as against public policy); <u>Margolin v. Shemaria</u>, 85 Cal. App. 4th
891 (Ct. App. 2000) (denial of fee, rather than mere discipline,

is an appropriate remedy for failing to obtain client's consent to the fee-splitting arrangement).

Parker argues in its opposition to the motion to dismiss, however, that the Court should adopt the equitable approach. (Docket No. 131 at pp. 7-19.) Under the equitable approach, the Court instead weighs a number of factors such as whether the client was deceived, Norton Frickey, P.C. v. James B. Turner, P.C., 94 P.3d 1266, 1269 (Colo. App. 2004), whether the violation had a financial impact on the client, Robert L. Crill, Inc. v. Bond, 76 S.W.3d 411 (Tex. App. 2001), and whether the violation is better understood as a mere "technical violation," Freeman v. Mayer, 95 F.3d 569, 575 (7th Cir. 1996). Courts that apply the equitable approach typically find that a violation of Model Rule 1.5(e) is grounds for professional discipline. See Norton Frickey, 94 P.3d 1266, 1270 (Colo. App. 2004); Poole v. Prince, 61 So. 3d 258, 281 (Ala. 2010).

This Court has not addressed the issue of enforcing a contract that violates Model Rule 1.5(e). To do so, the Court first analyzes state law and then considers persuasive authority from other jurisdictions and learned treatises. Id. "While conducting this inquiry, we pay particular heed to prior public policy pronouncements emanating from the state's highest court, and assume that the state tribunal would select a rule that best

implements those policies." <u>Wheeling</u>, 799 F.3d 1, 10 (1st Cir. 2015) (internal citations omitted).

Contractual liberty is not without limits. Pursuant to Article 1207 of the Civil Code of Puerto Rico, parties may not enter into an agreement that is contrary to laws, morals, or public order. P.R. Laws Ann. tit. 31, § 3372 ("contracting parties may make the agreement and establish the clauses and conditions which they may deem advisable, provided they are not in contravention of the law, morals, or public order."). The Supreme Court of Puerto Rico has "pristinely defined the concept of public order ("orden público") as a cause for the nullification of contracts executed in violation of that principle." <u>Cecort Realty Dev., Inc. v. Llompart-Zeno</u>, 100 F. Supp. 3d 145, 160 (D.P.R. 2015) (Fuste, J.) (citing <u>De Jesús González v. Autoridad de Carreteras</u>, 1999 TSPR 66, 148 D.P.R. 255, 1999 Juris P.R. 72 (1999). Thus, if the Court finds that the CAPECO Agreement is contrary to public order for violating Model Rule 1.5(e), it will apply the strict approach and find it unenforceable.

The Supreme Court of Puerto Rico has articulated a concept of public order that supports the Court's view that the Court will not enforce a contract that violates Model Rule 1.5(e). In Puerto Rico, public order is "the collection of regulations on morals and public ethics that are occasionally stated in the law,

but that even absent such explicit legislative statement, constitute the guiding principles of wise government." Hernandez v. Mendez & Assoc. Dev. Corp., No. R-75-383, 1976 WL 40122 (P.R. Sept. 15, 1976) (internal citations omitted); see also Cecort, 100 F. Supp. 3d 145, 161 (D.P.R. 2015) (Fuste, J.). Although there is no binding precedent determining whether a contract between attorneys that violates Model Rules 1.5(e) is enforceable, the Supreme Court of Puerto Rico has previously held that "the rules that govern the legal profession are in the realm of public order," Nassar Rizek v. Hernandez, No. RE-87-209, 1989 WL 607319 (P.R. Mar. 7, 1989) (internal quotations omitted). The Model Rules govern professional conduct in this Court because these rules are necessary to "the effective administration of justice and the integrity of the Court." Local Rule 83(E)(a). Puerto Rico increasingly seeks to incorporate ethics into the concept of public order. See Cecort, 100 F. Supp. 3d 145, 161 (D.P.R. 2015) (Fuste, J.) (quoting Hernandez, No. R-75-383, 1976 WL 40122 (P.R. Sept. 15, 1976)). Here, the Court finds that public order should evolve to preserve the attorney-client relationship.

It is particularly important that attorneys comply with the Model Rules that regulate professional conduct related to the attorney-client relationship. Puerto Rico law, like Model Rule 1.5(e), emphasizes the importance of attorney-client

relationship.     The   attorney-client   relationship   "should   be

grounded on absolute trust.   Subject to the exigencies which arise

from the obligations of a lawyer toward society, the laws, and the

courts,  every  member  of  the  bar  owes  his  clients  professional

treatment characterized by . . . the most complete honesty."   P.R.

Laws Ann. tit 4 App. IX, § 18.  The Supreme Court of Puerto Rico

reinforced     the     unique     importance     of     the     attorney-client

relationship:

> An attorney's professional services contract is markedly
> distinguishable   from   any   other   leave   of   services
> contract.   It is sui generis.   This type of contract is
> immersed    in    deontological    rules    that    imbue    the
> contractual  relationship  in  furtherance  of  a  higher
> public   interest   that   can   transcend   the   exclusive
> interest of the parties.

Nassar, No. RE-87-209, 1989 WL 607319 (P.R. Mar. 7, 1989).   There

is strong public interest in ensuring that attorneys communicate

with their clients, as required by the Model Rules.

All   parties   to   this   dispute,   however,   made   the

mutual transgression of executing a contract that stipulates that

the   contracting   parties   keep   the   fee   arrangement   strictly

confidential.     They   willfully   or   negligently   violated   their

obligation to disclose the fee-arrangement to their clients.   Cf.

Local Rule 83(E)(a) ("Attorneys who are admitted or permitted to

practice before this Court are expected to be thoroughly familiar

with the Model Rules' standards.").   The Court seeks to protect

public interest in maintaining the attorney-client relationship rather than protect the plaintiff and defendants' contractual interests. Cf. Morales v. Municipio de Toa Baja, 19 P.R. Offic. Trans. 724, 740 (1987) (When determining whether a contract is void as contrary to public order, "[t]he applicable statutory rules seek to protect the public interest and not the contracting parties.") Indeed, the Court will not lend aid to enforce a contract that is connected with an immoral act. See Cecort, 100 F. Supp. 3d 145, 161 (D.P.R. 2015) (Fuste, J.) ("we as courts cannot assist litigants who have incurred in behaviors contrary to law, morals or public order."); Santiago v. Santiago, 731 F. Supp. 2d 202, 208 (D.P.R. 2010) ("It is well settled that 'where the contract grows immediately out of, and is connected with, an illegal or immoral act, a Court of justice will not lend its aid to enforce it.'") (quoting Armstrong v. Toler, 24 U.S. (11 Wheat.) 258, 261, 6 L. Ed. 468 (1826)). The Court will not enter the dangerous arena of enforcing a contract between attorneys who violated their duty to their clients.

        In refusing to enforce a contract that violates Model Rule 1.5(e), the Court recognizes that the strict approach is, in part, contrary to Local Rule 83(E)(a), which calls for violations to be grounds for disciplinary proceedings. Local Rule 83(E)(a). The Court, however, has the discretion to disregard

local rules.  See Garcia-Goyco v. Law Environmental Consultants,
Inc., 428 F.3d 14, 19 (1st Cir. 2005) ("it is for the district
court to determine what departures from its rules may be
overlooked.") (quoting United States v. Diaz-Villafane, 874 F.2d
43, 46 (1st Cir. 1989)); see also Southwire Co. v. Ramallo Bros.
Printing, Inc., No. 03-1100, 2009 U.S. Dist. LEXIS 116631, at *44
(D.P.R. Dec. 15, 2009) (Gelpi, J.).  In addition, the Court has
the duty to ensure that the attorneys appearing before it adhere
to proper professional conduct.  Cf. United States v. Genao-
Sanchez, 208 F. Supp. 2d 130, 137 (D.P.R. 2002) ("This court, as
the ultimate guarantor of its own integrity, bears the duty of
ensuring compliance with its norms of conduct.").  The Supreme
Court of Puerto Rico's stance on public order convinces the Court
that adopting the strict approach to violations of Model
Rule 1.5(e) is necessary to protect the sanctity of the attorney-
client relationship.  The Court will not assist the contracting

parties in perfecting their transgression by enforcing the CAPECO

Agreement.[5]

    For those reasons, the CAPECO Agreement is contrary

to public order. The CAPECO Agreement is, therefore,

unenforceable. See Cecort, 100 F. Supp. 3d 145, 160 (D.P.R. 2015)

(Fuste, J.) (citing De Jesús González v. Autoridad de Carreteras,

1999 TSPR 66, 99 TSPR 66, 148 D.P.R. 255, 1999 Juris P.R. 72 (1999)

(contracts that are against public order are null.); see also

Citibank Glob. Mkts., Inc. v. Santana, 573 F.3d 17, 24 (1st Cir.

2009) (citing Article 1213 of the Puerto Rico Civil Code, P.R.

Laws Ann. tit. 31, § 3391) (Puerto Rico law requires that a valid

contract be an agreement for a definite, legal object which may be

the subject of a contract). The plaintiff's specific performance

claim is, thus**, DISMISSED WITH PREJUDICE.**

    **D.** *Quantum Meruit*

    Notwithstanding the Court's decision not to enforce a

contract that violates Model Rule 1.5(e), Parker is able to pursue

---

[5] Although the Court grants the moving defendants' dismissal of
plaintiff's claim for specific performance, the Court does not
condone the implications of the moving defendants' argument: after
reaping all benefits from the contract, defendants deem it
unenforceable as to the plaintiff for an ethical violation to which
they are also a party. But the Court will not use an equitable
doctrine to evaluate unethical conduct. The Court will not enforce
a contract that is repugnant to "the effective administration of
justice and the integrity of the Court." Local Rule 83(E)(a).

equitable relief.  Attorneys who cannot enforce an agreement which violates an ethical rule may still recover under the doctrine of *quantum meruit*.  See Smilow v. Sw. Bell Mobile Sys., 323 F.3d 32, 38 (1st Cir. 2003) ("Under the doctrine of quantum meruit, one who renders goods or services in the absence of an enforceable contract may be entitled to payment for those services to the extent the recipient benefitted from them."); see also Gagne v. Vaccaro, 766 A.2d 416 (Conn. 2001) (where the court adopted the strict approach but allowed recovery under *quantum meruit*.)

Moving defendants argue that recovery under *quantum meruit* is time barred pursuant to the three-year statute of limitations in Article 1867(1) of the Puerto Rico Civil Code; P.R. Laws Ann. tit. 31 § 5297(1).  This is not the applicable statute of limitations for the contract in question.  Article 1867(1) deals with, among other things, an attorney seeking payment of fees for services rendered.  See, e.g., Orraca-López v. E.L.A., 2014 P.R. Sup. LEXIS 138 (P.R. 2014).

Since neither plaintiff nor defendants argue whether the agreement is a civil contract or a commercial contract, the applicable statute of limitations is unclear.  In the case of a civil contract, Article 1864 of the Puerto Rico Civil Code establishes a statute of limitations of fifteen years for contracts, like the one in question, which have no termination

date.  P.R. Laws Ann, tit. 31 § 5294; Nazario v. Johnson & Johnson

Baby Prods., Inc., 184 F.Supp.2d 157, 162 (D.P.R. 2002).  In the

case of a commercial contract, Article 940 of the Commercial Code

provides that the applicable statute of limitations is five years

for contracts without a termination date.  See P.R. Laws Ann. tit.

10 § 1902; Ramallo Brothers Printing, Inc. v. Ramis, 133 D.P.R.

436, 441 (1993).

An action for *quantum meruit* accrues when the work for

which the party seeks compensation is completed.  Rousseau v.

Diemer, 24 F. Supp. 2d 137, 142 (D. Mass. 1998).  Parker indicates

that it complied with all obligations under the CAPECO Agreement

until defendants unilaterally terminated the agreement in March

2012.  (Docket No. 93 at p. 4.)  The defendants were allegedly not

compensated for the underlying litigation until after the CAPECO

Agreement was terminated.  Id. at p. 5.  The action for *quantum

meruit*, therefore, accrued sometime after March 2012.  The Court

will not attempt to determine whether the contract is civil or

commercial in nature because under either scenario, the action for

*quantum meruit* is not time barred.  If the CAPECO Agreement were

to be determined to be a commercial contract, plaintiff had until

sometime after March 2017 to seek recovery under *quantum meruit.*

If the CAPECO Agreement were to be considered a civil contract,

the date to seek relief would extend to March 2027.  Because Parker

filed its complaint on February 25, 2016, the claim is not time barred under either scenario. (Docket No. 1.) Moving defendants' motion for dismissal of plaintiff's *quantum meruit* claim is **DENIED**.

**IV.   CONCLUSION**

For the reasons expressed above, defendants' motion to dismiss plaintiff's complaint is **DENIED**. Defendants' argument for dismissal based on plaintiff being a non-signatory to the CAPECO Agreement is **DENIED**.   Parker's specific performance claim is **DISMISSED WITH PREJUDICE**, and defendants' motion for dismissal on plaintiff's *quantum meruit* claim is **DENIED**.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, July 13, 2017.


s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE