# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

PARKER WAICHMAN LLP,

    **Plaintiff**,

        **v.**

SALAS LC, *et al.*,

    **Defendants.**

**Civil No.** 16-1333 (FAB)

## OPINION AND ORDER

BESOSA, District Judge.

Before the Court are defendants John F. Nevares and Associates, P.S.C.'s ("Nevares"), and Salas & Company, L.C.'s ("Salas") (collectively, "defendants")s' motion to strike pursuant to Federal Rule of Civil Procedure 56 ("Rule 56") and Local Rule 7(a) (Docket No. 201); defendants' motion for summary judgment filed pursuant to Rule 56 (Docket No. 182); plaintiff Parker Waichman LLP ("Parker")'s motion to withdraw its request for a jury trial pursuant to Federal Rule of Civil Procedure 38 ("Rule 38") (Docket No. 197); defendants' motion for partial dismissal of the *quantum meruit* claim pursuant to Local Rule 7(a) (Docket No. 198); and co-defendant Eric Quetglas-Jordan ("Quetglas")'s motion requesting leave to file an amended crossclaim pursuant to Federal Rules of Civil Procedure 15

("Rule 15") and 16 ("Rule 16") (Docket No. 188).[1]  For the reasons

set forth below, the defendants' motion to strike (Docket No. 201),

the defendants' motion for summary judgment (Docket No. 182),

Parker's motion to withdraw its request for a jury trial (Docket

No. 197), and the defendants' motion for partial dismissal (Docket

No. 198) are all **DENIED**, and Quetglas' motion requesting leave to

file the amended crossclaim (Docket No. 188) is **GRANTED.**

I.    **Background**

In November 2009, Parker Waichman Alonso LLP ("Parker

Waichman Alonso")[2] and the defendants (collectively, "parties")

executed a "Confidential Operating Agreement for Plaintiff

Attorney Group in Caribbean Petroleum Oil and Fire Litigation"

("CAPECO Agreement," or "Agreement").  (Docket No. 14, Ex. 1.)[3]

The CAPECO Agreement created a "Plaintiff Attorney Group" for the

parties to prosecute collectively claims arising from the October

2009 explosion at the Caribbean Petroleum Corporation tank farm in

Bayamón, Puerto Rico.  (Docket No. 14, Ex. 1 at p. 1.)  The

---

[1] Quetglas does not join Nevares and Salas' motion for summary judgment, motion for partial dismissal, or motion to strike.  (Docket Nos. 182, 198, 201.) Quetglas only moves for leave to file the amended crossclaim.  (Docket No. 188.) The Court's use of the collective term "defendants" refers exclusively to Nevares and Salas.

[2] Parker is the successor to Parker Waichman Alonso.  (Docket No. 93 at p. 1.)

[3] Becnel Law Firm LLC ("Becnel") and Douglas and London ("Douglas") were also parties to the CAPECO Agreement but are not parties to this dispute.  (Docket 14, Ex. 1 at p. 2.)  All parties to the Agreement are entities "dedicated to the practice of law."  (Docket No. 93 at p. 1.)

Agreement stipulated that all parties "shall commit to actively participate" and "fully cooperate with one another for the common benefit" of the claimants. <u>Id.</u> Parker Waichman Alonso agreed to advance the "[c]apital expenditures necessary to fund the prosecution." <u>Id.</u> at p. 2.[4]

The Agreement sets forth a process by which to reimburse the parties' expenses and distribute attorney's fees. <u>Id.</u> The parties agreed to first, reimburse member firms' capital expenditures, and second, allocate fees to reimburse out of pocket expenses "that [were] not for specific cases." <u>Id.</u> The parties agreed to share the remaining fees among themselves equally. <u>Id.</u>

In February 2016, Parker commenced this action, contending that the defendants "unilaterally terminated the CAPECO Agreement" without reimbursing Parker for its "capital contributions," or distributing "the net amount of attorney's fees to which [Parker] is entitled under the CAPECO Agreement." (Docket No. 1 at p. 5.) Parker allegedly "invested the sum of $188,586.50 in capital expenditures necessary for the prosecution," including $86,499.39 in advertising for the joint venture. (Docket No. 186 at p. 2.) Parker also purportedly "invested a substantial amount of 'man hours' in attorneys and paralegal time" to prosecute the claims.

---

[4] Becnel and Douglas also agreed to advance capital expenditures to fund the prosecution. (Docket 14, Ex. 1 at p. 2.)

(Docket No. 93 at p. 3.)[5]  Parker sought specific performance of the CAPECO Agreement and, alternatively, recovery pursuant to the doctrine of *quantum meruit*.  <u>See</u> <u>id.</u>

In July 2017, the Court found that the CAPECO Agreement is unenforceable and dismissed Parker's specific performance claim. <u>Parker Waichman LLP v. Salas LC</u>, 263 F. Supp. 3d 369, 380 (D.P.R. 2017) (Besosa, J.).   The Court nonetheless allowed Parker to pursue equitable relief through the doctrine of *quantum meruit*. <u>Id.</u>

## II.  Jurisdiction

The Court has jurisdiction over this civil action because the dispute is between citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs.  <u>See</u> 28 U.S.C. § 1332(a)(1).

## III. Defendants' Motion to Strike

On March 9, 2018, the defendants filed a motion to strike assertions and evidence filed by Parker in opposition to the defendants' motion for summary judgment.  (Docket No. 201; <u>see</u> Docket Nos. 186 & 187.)  The defendants claim that "a number of [Parker's] additional purportedly uncontested facts . . . were

---

[5] In the first amended complaint, Parker detailed the amount of hours worked by each of its attorneys and paralegals in furtherance of the CAPECO Agreement. (Docket No. 2 at p. 4.)  Parker nevertheless failed to assert the precise number of hours for which it seeks compensation in the second amended complaint. (Docket No. 93 at p. 7.)

supported by an affidavit, a deposition transcripts [sic] and various unauthenticated documents," which are "inadmissible *per se* and are otherwise hearsay." (Docket No. 201 at p. 2.) According to the defendants, "several portions of the affidavit and deposition transcript either contain inadmissible hearsay or incompetent testimony" and therefore must be "stricken [along with the unauthenticated documents] and may not be taken into consideration when ruling of [sic] the pending motion for summary juedgment [sic]." Id.

### A. Legal Standard

At the summary judgment stage, a "party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The nonmovant is not required, however, to "produce evidence in a form that would be admissible at trial in order to avoid summary judgment." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotation marks and citation omitted). An objection as to the admissibility of evidence must "not [be] that the material 'has not' been submitted in admissible form, but that it 'cannot' be." S.E.C. v. Ramírez, 2018 WL 2021464, at *6 (D.P.R. Apr. 30, 2018) (Delgado-Hernández, J.) (internal citations omitted). The objecting party must explain why the evidence could not be presented in an admissible form at trial. See Int'l

Shipping Agency, Inc. v. Unión de Trabajadores de Muelles Loc. 1740, 2015 WL 5022794, at *3 (D.P.R. Aug. 21, 2018) (Carreño-Coll, Mag.) ("Because [the plaintiff] makes no argument that the defendants' evidence could not be authenticated, its objection should be denied."); see also González-Bermúdez v. Abbott Laboratories P.R. Inc., 214 F. Supp. 3d 130, 137 (D.P.R. 2016) (Pérez-Giménez, J.).

**B.  Discussion**

The defendants' efforts to strike Parker's evidence and assertions are futile.  The defendants move to strike the news article attached as an exhibit to Parker's opposition memorandum, five documents attached to Parker's opposing statement of uncontested facts, a segment of Peter Cambs's deposition testimony, and many paragraphs of Jerrold Parker's declaration. (Docket No. 201 at pp. 5-7; see Docket No. 186, Ex. 1 at pp. 1-2, 5-8, 23, 26-42; Docket No. 187, Ex. 1.)  The defendants claim that the evidence is either "inadmissible hearsay and irrelevant," "unauthenticated," "conclusory and self-serving," or in violation of Model Rule of Professional Conduct 7.4(d).  (Docket No. 201 at p. 5.)

First, the evidence reaches the "very low bar for relevance."  See United States v. Rodríguez-Soler, 773 F.3d 289, 293 (1st Cir. 2014).  Second, the Court need not address whether

the evidence is inadmissible hearsay because "a district court may consider hearsay evidence submitted in an inadmissible form at the summary judgment stage where the content of the evidence proffered could later be provided in an admissible form at trial." S.E.C., 2018 WL 2021464, at *7.  Parker is not required to submit evidence "in a form that would be admissible at trial in order to avoid summary judgment," and the defendants fail to explain why Parker's evidence could not be submitted in an admissible form at trial. See Celotex, 477 U.S. at 324 (internal quotation marks and citation omitted); S.E.C., 2018 WL 2021464, at *7.  Third, Peter Cambs and Jerrold Parker are both testifying at trial, and the defendants similarly fail to establish why the content of the declaration and deposition testimony could not be asserted in an admissible form at trial.  (Docket No. 187 at p. 17.)

     The defendants' authentication objections are also insufficient.  See González-Bermúdez, 214 F. Supp. 3d at 137.  "A plain objection simply stating that the exhibit proffered has not been properly authenticated will not suffice." Id.  The defendants fail to illustrate that these documents could not be authenticated at trial.  See S.E.C., 2018 WL 2021464, at *7; see also Santos v. Nogueras, 2012 WL 2871108, *4 (D.P.R. July 11, 2012) (López, Mag. J.).  Finally, the defendants' contention regarding the Model Rules of Professional Conduct is unavailing because

Parker is not "stat[ing]" or "imply[ing]" that he is "certified as a specialist in a particular field of law." See Model Rules of Prof'l Conduct r. 7.4(d) (Am. Bar Ass'n, Discussion Draft 1983); Docket No. 186, Ex. 1 at pp. 1-2, 5. Parker merely communicates its "experience and prestige," which are relevant factors for the Court's *quantum meruit* assessment. See Fernández-Sánchez v. Fernández, 2002 WL 31661971 (TCA), at *4 (P.R. Cir. Nov. 8, 2002) (citing Pérez-Marrero v. Colegio de Cirujanos Dentistas de P.R., 131 D.P.R. 545, 562 n.14, 1992 P.R.-Eng. 754,861 (P.R. 1992)) (official translation at Docket No. 222, Ex. 1 at p. 30). Accordingly, the Court **DENIES** the defendants' motion to strike (Docket No. 201).

## IV. Defendants' Motion for Summary Judgment

### A. Standard of Review

A court will grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation." Dunn v. Trs. of Bos. Univ., 761 F.3d 63, 68 (1st Cir. 2014) (internal citation omitted).

The role of summary judgment is to "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Tobin v. Fed. Exp. Corp., 775 F.3d 448, 450 (1st Cir. 2014) (internal citation omitted). The party moving for summary judgment has the initial burden of "demonstrat[ing] the absence of a genuine issue of material fact" with definite and competent evidence. Celotex, 477 U.S. at 323; Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). The movant must identify "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any'" which support its motion. Celotex, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).

Once a properly supported motion has been presented, the burden shifts to the nonmovant "to demonstrate that a trier of fact reasonably could find in [its] favor." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (internal citation omitted). "When the nonmovant bears the burden of proof on a particular issue, [he or] she [or it] can thwart summary judgment only by identifying competent evidence in the record sufficient to create a jury question." Tobin, 775 F.3d at 450-51. A court draws all reasonable inferences from the record in the light most favorable to the nonmovant, but it disregards

unsupported and conclusory allegations.  McGrath v. Tavares, 757

F.3d 20, 25 (1st Cir. 2014).

###     B.    Applicable Law

        The Court applies Puerto Rico contract law to this

diversity suit.  See Quality Cleaning Prod. R.C., Inc. v. SCA

Tissue N. Am., LLC, 794 F.3d 200, 204 (1st Cir. 2015) ("Federal

courts sitting in diversity apply the substantive law of the state

and, pursuant to statute, Puerto Rico is treated as a state for

diversity purposes.").  The Puerto Rico civil code, article 1473,

governs actions based on *quantum meruit*.  Pérez-Marrero, 131

D.P.R. at 557 (citing P.R. Laws Ann. tit. 31, § 4111).[6]  Article

1473 states,

> Professional services, as regards the remuneration
> therefor, shall be subject to the agreement of the
> parties; and where there is no agreement as to
> remuneration, and a disagreement should arise respecting
> the same, the party entitled to such remuneration may
> sue and recover from the adverse party the reasonable

---

[6] In contrast to the United States common law system, where law is developed through judicial decisions with precedential authority, Puerto Rico contract law follows a civil law system, where core principles are codified and the code serves as the primary source of law.  See generally, Liana Fiol Matta, Civil Law and Common Law in the Legal Method of Puerto Rico, 40 Am. J. Comp. L. 783 (1992).  Puerto Rico judicial opinions resolving contract disputes do not bind subsequent contract cases.  See generally, David C. Indiano, Federal District Court in Puerto Rico: A Brief Look at the Court and Federal Handling of Commonwealth Civil Law in Diversity Cases, 13 Case W. Res. J. Int'l L. 231 (1981).  Accordingly, in applying the Puerto Rico civil code, the Court sets forth two distinct, yet coexisting ways in which Puerto Rico judges have construed *quantum meruit* doctrine.  See id.  One application focuses on services rendered, while the other interpretation centers on "unjust enrichment."  Compare Fernández-Sánchez, 2002 WL 31661971 (TCA), at *4 (official translation at Docket No. 222, Ex. 1 at p. 30) with Ramos-Rivera v. González-Hernández, 2014 WL 7398737, at *6 (P.R. Cir. Oct. 31, 2014) (official translation at Docket No. 226 at p. 3).

value of such services in any court of competent
jurisdiction.

P.R. Laws Ann. tit. 31, § 4111. Pursuant to *quantum meruit*
doctrine, attorneys are thus "entitled to receive reasonable
compensation" for their rendered professional services. Pérez-
Marrero, 131 D.P.R. at 559. "In the absence of an explicit pact,
the Courts are called upon to set the reasonable value of the
services rendered." Comité Pro Defensa Ambiental v. Compañía de
Aguas, 2009 WL 4059966, *2 (P.R. Cir. Aug. 27, 2009) (citing Méndez
Rodríguez v. Morales Molina, 142 D.P.R. 26 (P.R. 1996)) (official
translation at Docket No. 222, Ex. 1 at p. 14). To determine the
reasonable value of the services rendered,

> the courts may take into account the following factors:
> (1) the difficulty and complexity of the issues
> involved; (2) the time and work required; (3) the fees
> that are usually charged in the judicial district for
> similar services; (4) the experience and prestige of the
> attorney.

Fernández-Sánchez, 2002 WL 31661971 (TCA), at *4 (citing Pérez-
Marrero, 131 D.P.R. at 562 n.14) (official translation at Docket
No. 222, Ex. 1 at p. 30).

Ultimately, "[t]he principle of *quantum meruit* or
reasonable value is based on the doctrine of unjust enrichment and
'is used when dealing with an implicit obligation that arises when
there does not exist a valid agreement between the parties.'"
Ramos-Rivera, 2014 WL 7398737, at *6 (citing Danosa Caribbean v.

Santiago Metal, 179 D.P.R. 40, 61 (P.R. 2010)) (official translation at Docket No. 226 at p. 3). *Quantum meruit* "means 'as much as deserved,'" and "[b]eing a principle based on the doctrine of unjust enrichment, it is relevant to refer to what the [Puerto Rico] Supreme Court has stated regarding" unjust enrichment: that "not applying [the doctrine] would perpetuate the inequity of someone unfairly enriching him or herself to the detriment of another." Id. at *7 (citing Collazo Vázquez v. Huertas Infante, 171 D.P.R. 84, 139 (P.R. 2007)) (official translation at Docket No. 226 at p. 3).

### C. Defendants' Arguments

The defendants move for summary judgment claiming that "there is no trialworthy issue to be resolved by the jury" relating to Parker's *quantum meruit* claim. (Docket No. 182 at p. 3.) The defendants argue that the advertising costs incurred by Parker "are not recoverable" and that, "[o]f the actual litigation costs claimed by [Parker], which add up to $102,087.11, [Parker] was already reimbursed $60,000." Id. at p. 5 (internal citation omitted). The defendants concede that "the only litigation costs to which [Parker] would be entitled on a *quantum meruit* basis amount to $42,087.11." Id.

With respect to attorney's fees, the defendants claim that Parker "cannot prove the reasonableness of the claimed . . .

fees" because "Parker would have to present expert evidence that the $650.00 rate that it alleged is reasonable in Puerto Rico's legal community." Id.   The defendants also contend that Parker lacks evidence to corroborate the time for which it requests compensation and that, "[i]n the absence of those records and a showing that the time actually helped the CAPECO Litigation, the claimed time cannot be compensated." Id. at p. 6.

### D.   Discussion

The defendants' arguments are unpersuasive because Parker's *quantum meruit* claim raises a genuine issue of material fact as to the hours Parker worked on behalf of the defendants. See Dunn, 761 F.3d at 68.   The defendants argue that Parker "lacks evidence to establish that all of the time that it claims should be compensated, the majority of which is not substantiated with detailed and contemporaneous time records." (Docket No. 182 at p. 6.)   Parker, however, asserts that it will put forth "detailed" evidence at trial, through the testimony of Jerrold Parker and Peter Cambs, to confirm the work performed on the defendants' behalf and corroborate Parker's time estimations regarding the services rendered related to the CAPECO Agreement.   (Docket No. 187 at p. 17.)

The "time and work required" is a critical factor in assessing Parker's *quantum meruit* claim.   See Fernández-Sánchez,

2002 WL 31661971 (TCA), at *4 (citing <u>Pérez-Marrero</u>, 131 D.P.R. at 562 n.14) (official translation at Docket No. 222, Ex. 1 at p. 30). Evidence as to the extent of Parker's services "is such that a reasonable jury could resolve the point in the favor of the non-moving party" and "has the potential of determining the outcome of the litigation." <u>See</u> <u>Dunn</u>, 761 F.3d at 68. A reasonable jury could find Parker's testimony credible and award Parker compensation for the entirety of Parker's alleged rendered services.

The defendants' reply that Parker "does not support any of [its] assumptions, suppositions, conclusions and understandings with any admissible evidence" is similarly unavailing at the summary judgment stage. <u>See</u> Docket No. 202 at p. 5; <u>Celotex</u>, 477 U.S. at 324. When the nonmovant carries the burden of persuasion at trial, Rule 56 "requires the nonmoving party to go beyond the pleadings" to "designate specific facts showing that there is a genuine issue for trial." <u>Celotex</u>, 477 U.S. at 324 (internal quotation marks and citation omitted). The nonmovant is not required, however, to "produce evidence in a form that would be admissible at trial in order to avoid summary judgment." <u>Id.</u> "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." <u>Id.</u> Parker supports its

opposition memorandum with an affidavit and excerpts from a deposition, as well as other documents. (Docket No. 186, Ex. 1.) Parker is not required to controvert the defendants' claims with "admissible evidence" at this stage in the litigation. Parker's evidence is sufficient to surmount summary judgment. See Celotex, 477 U.S. at 324.

It is premature for the Court to assess whether Parker's alleged advertising expenses may be included in its claim for _quantum meruit_. There is insufficient evidence before the Court to confirm or deny whether Parker did, in fact, invest in advertising, and if so, the extent to which Parker invested in advertising on behalf of the defendants. See Ramos-Rivera, 2014 WL 7398737, at *6 (official translation at Docket No. 226 at p. 3). Accordingly, the Court **DENIES** the defendants' motion for summary judgment (Docket No. 182).

## V. Parker's Motion to Withdraw its Request for a Jury Trial

On March 7, 2018, Parker filed a motion to withdraw its request for a jury trial. (Docket No. 197.) Parker argues that "[t]he judge and not the jury is the best trier of fact here." Id. at p. 3. Parker maintains that "[a] jury would have a very difficult time determining reasonable hourly rates for the jurisdiction absent expert testimony," and that "[a] jury would also have a very difficult time determining how much time attorneys

and paralegals may have reasonably expended in the CAPECO litigation absent time records." Id.

Parker's contentions are unpersuasive. Parker demanded a trial by jury, Docket No. 93 at p. 7, and "once the demand is made, *both* parties must consent before [the demand] can be withdrawn." Concordia Co. v. Panek, 115 F.3d 67 (1st Cir. 1997) (citing Fed. R. Civ. P. 38(d), 39(a)). The defendants have not consented to Parker's withdrawal. Additionally, there is no reason why the jury would be unfit to determine "reasonable hourly rates" or "how much time" Parker's staff worked in furtherance of the CAPECO Agreement. See Docket No. 197 at p. 3. Accordingly, the Court **DENIES** Parker's motion to withdraw its request for a jury trial (Docket No. 197).

## VI. Defendants' Motion for Partial Dismissal of Parker's *Quantum Meruit* Claim

On March 7, 2018, the defendants filed a motion for partial dismissal of Parker's *quantum meruit* claim. (Docket No. 198.) The defendants argue that Parker's *quantum meruit* claim for attorney's fees should be dismissed because Parker "admits that expert testimony is necessary to establish a reasonable hourly rate" in its motion to withdraw its request for a jury trial. Id. at p. 1; see Docket No. 197 at p. 3.

The defendants' claims are unavailing. Expert testimony is not necessary to establish a *quantum meruit* claim. <u>See, e.g.</u>, <u>Pérez-Marrero</u>, 131 D.P.R. at 557-60, 562 n.14 (setting forth the *quantum meruit* standard and relevant balancing factors with no mention of expert testimony); <u>Comité Pro Defensa Ambiental</u>, 2009 WL 4059966, *2 (upholding a trial court's *quantum meruit* assessment that involved no expert testimony) (official translation at Docket No. 222, Ex. 1 at p. 14). Furthermore, Parker made no such contention that expert testimony is "necessary" to establish its case. <u>See</u> Docket No. 197 at p. 3. Indeed, Parker recognized that establishing its claim for attorney's fees before a jury may be "very difficult" without expert testimony, but Parker never asserted that lacking expert testimony would render its claim legally impossible to prove. <u>Id.</u> Accordingly, the Court **DENIES** the defendants' motion for partial dismissal (Docket No. 198.)

## VII. Quetglas's Motion Requesting Leave to File Amended Crossclaim

On April 24, 2017, Quetglas asserted a crossclaim against Nevares and Salas. (Docket No. 124.) Nevares and Salas answered the crossclaim on May 11, 2017. (Docket No. 127.) Ten months later, Quetglas filed a motion requesting to amend his crossclaim. (Docket No. 188.) Quetglas contends that, upon the completion of discovery, he "learned that a fee distribution agreement that he had reached with Nevares . . . was based upon incorrect material

information provided to him by Nevares." Id. at p. 2. Quetglas

maintains that at the end of discovery, he learned that Nevares

and Salas misrepresented the total settlement amount as $8,570,000

and the attorney's fees as $2,828,100, "when the truth was that

the total settlement[] amount was $12,970,000, and the 33% fees

[amounted to] $4,280,100." (Docket No. 208 at p. 3.) Quetglas

requests that the Court grant him leave to amend his crossclaim to

"allege[] the nullity of [the fee distribution agreement that he

had reached with Nevares] and request that fees be distributed on

*quantum meruit*." (Docket No. 188 at p. 2.) According to

Quetglas, the Court "should freely give leave to the crossclaim

because justice so requires." Id. (citing Fed. R. Civ. P. 15).

The Court agrees.

### A.    Legal Standard

"A motion to amend a complaint will be treated

differently depending on its timing and the context in which it is

filed." Steir v. Girl Scouts of the USA, 383 F.3d 7, 11-12 (1st

Cir. 2004). After the filing of a responsive pleading by the

defendant, "the permission of the court or the consent of the

opposing party is required." Id. at 12 (citing Fed. R. Civ. P.

15(a)). "The Court should freely give leave as justice so

requires." Fed. R. Civ. P. 15(a)(2). "As a case progresses, and

the issues are joined, the burden on a plaintiff seeking to amend

a complaint becomes more exacting." Id. "Scheduling orders, for example, typically establish a cut-off date for amendments." Id. "Once a scheduling order is in place, the liberal default rule is replaced by the more demanding 'good cause' standard of Fed. R. Civ. P. 16(b)." Id. (citing O'Connell v. Hyatt Hotels of P.R., 357 F.3d 152, 154-55 (1st Cir. 2004)). The Rule 16 "good cause" standard focuses on the diligence of the movant more than the prejudice to the party-opponent. Id. (citing O'Connell, 357 F.3d at 154-55). "Where the motion to amend is filed after the opposing party has timely moved for summary judgment, a plaintiff is required to show 'substantial and convincing evidence' to justify a belated attempt to amend a complaint." Id. (quoting Resolution Trust Corp. v. Gold, 30 F.3d 251, 253 (1st Cir. 1994)).

**B.    Discussion**

Quetglas presents "substantial and convincing evidence" that justifies a belated request to amend his crossclaim. See Steir, 383 F.3d at 12. Quetglas explains that his request to amend is belated because the completion of discovery revealed new evidence regarding the total settlement amount and attorney's fees. (Docket No. 188 at p. 2.) This reasoning demonstrates "good cause" for the delay and does not controvert Quetglas's diligence. See Steir, 383 F.3d at 12. Moreover, Quetglas requests to amend his crossclaim in order to add a *quantum meruit*

claim against Nevares and Salas for an alleged material misrepresentation. (Docket No. 188 at p. 2; Docket No. 208 at p. 3.) Nevares and Salas do not deny making this misrepresentation in their opposition or sur-reply. See Docket Nos. 193 and 213. The requested *quantum meruit* crossclaim "arises out of the transaction or occurance that is the subject matter" of this action and "relates to [the] property that is the subject matter" of this case. See Fed. R. Civ. P. 13(g). Because Quetglas demonstrates "good cause" for his delay and provides "substantial and convincing evidence" to justify his belated request, the Court **GRANTS** Quetglas's motion requesting leave to file the amended crossclaim (Docket No. 188).

## VIII. Conclusion

For the reasons stated, the defendants' motion to strike (Docket No. 201), the defendants' motion for summary judgment (Docket No. 182), Parker's motion to withdraw its request for a jury trial (Docket No. 197), and the defendants' motion for partial dismissal (Docket No. 198) are **DENIED.** Quetglas's motion requesting leave to file the amended crossclaim (Docket No. 188) is **GRANTED.** Quetglas may file the amended crossclaim **no later than May 29, 2018**. Pursuant to Rule 15(a)(3), Nevares and Salas may file their answer **no later than June 11, 2018**.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, May 25, 2018.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE