# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

PARKER WAICHMAN LLP,

    **Plaintiff**,

        **v.**

SALAS LC, *et al.*,

    **Defendants.**

**Civil No.** 16-1333 (FAB)

## OPINION AND ORDER

BESOSA, District Judge.

Before the Court are co-defendant Eric Quetglas-Jordán ("Quetglas")'s motion for summary judgment against defendants John F. Nevares and Associates, P.S.C.'s ("Nevares"), and Salas & Company, L.C.'s ("Salas") (collectively, "defendants") pursuant to Federal Rule of Civil Procedure 56 ("Rule 56") (Docket No. 267), and the defendants' cross-motion for summary judgment against Quetglas and plaintiff Parker Waichman LLP ("Parker") pursuant to Rule 56 (Docket No. 269). For the reasons set forth below, the Court **DENIES** Quetglas' motion for summary judgment (Docket No. 267) and the defendants' cross-motion for summary judgment (Docket No. 269).

**I.   Background**

In November 2009, Quetglas, the defendants, and Parker Waichman Alonso LLP ("Parker Waichman Alonso")[1] (collectively, "parties") executed a "Confidential Operating Agreement for Plaintiff Attorney Group in Caribbean Petroleum Oil and Fire Litigation" ("CAPECO Agreement," or "Agreement").  (Docket No. 14, Ex. 1.)[2]  The CAPECO Agreement created a "Plaintiff Attorney Group" for the parties to prosecute collectively claims arising from the October 2009 explosion at the Caribbean Petroleum Corporation tank farm in Bayamón, Puerto Rico.  (Docket No. 14, Ex. 1 at p. 1.) The Agreement stipulated that all parties "shall commit to actively participate" and "fully cooperate with one another for the common benefit" of the claimants.  Id.  Parker Waichman Alonso agreed to advance the "[c]apital expenditures necessary to fund the prosecution."  Id. at p. 2.[3]

The Agreement set forth a process by which to reimburse the parties' expenses and distribute attorney's fees.  (Docket No. 14, Ex. 1 at p. 2.)  The parties agreed to first, reimburse member

---

[1] Parker is the successor to Parker Waichman Alonso.  (Docket No. 93 at p. 1.)

[2] Becnel Law Firm LLC ("Becnel") and Douglas and London ("Douglas") were also parties to the CAPECO Agreement but are not parties to this dispute.  (Docket 14, Ex. 1 at p. 2.)  All parties to the Agreement are entities "dedicated to the practice of law."  (Docket No. 93 at p. 1.)

[3] Becnel and Douglas also agreed to advance capital expenditures to fund the prosecution.  (Docket 14, Ex. 1 at p. 2.)

firms' capital expenditures, and second, allocate fees to reimburse out of pocket expenses "that [were] not for specific cases." Id. The parties agreed to share the remaining fees among themselves equally. Id.

In February 2016, Parker commenced this action, contending that the defendants and Quetglas "unilaterally terminated the CAPECO Agreement" without reimbursing Parker for its "capital contributions," or distributing "the net amount of attorney's fees to which [Parker] is entitled under the CAPECO Agreement." (Docket No. 2 at p. 5.) Parker allegedly "invested the sum of $188,586.50 in capital expenditures necessary for the prosecution," including $86,499.39 in advertising for the joint venture. (Docket No. 186 at p. 2.) Parker also purportedly "invested a substantial amount of 'man hours' in attorneys and paralegal time" to prosecute the claims. (Docket No. 93 at p. 3.)[4] Parker sought specific performance of the CAPECO Agreement and, alternatively, recovery pursuant to the doctrine of *quantum meruit*. See id.

In July 2017, the Court found the CAPECO Agreement unenforceable and dismissed Parker's specific performance claim.

---

[4] In the first amended complaint, Parker detailed the amount of hours worked by each of its attorneys and paralegals in furtherance of the CAPECO Agreement. (Docket No. 2 at p. 4.) Parker nevertheless failed to assert the precise number of hours for which it seeks compensation in the second amended complaint. (Docket No. 93 at p. 7.)

Parker Waichman LLP v. Salas LC, 263 F. Supp. 3d 369, 380 (D.P.R. 2017) (Besosa, J.). The Court nonetheless allowed Parker to pursue equitable relief through the doctrine of *quantum meruit*. Id.; see also Parker Waichman LLP v. Salas LC, 320 F. Supp. 3d 327, 336-37 (D.P.R. 2018) (Besosa, J.).

Quetglas asserted a crossclaim against the defendants in April 2017, an amended crossclaim in May 2018, and a second amended crossclaim in August 2019. (Docket Nos. 124, 228, 308.) Quetglas claimed that he "was not responsible for the fault the [sic] led the Court to nullify the [CAPECO] Agreement," and that he "is entitled to collect against the [] defendants an equal share of the fees received by each of them" pursuant to Article 1258 of the Puerto Rico Civil Code ("Article 1258"). (Docket No. 308 at p. 8.) Quetglas also alleged that he entered into a fee agreement with the defendants "relying upon the accuracy and veracity of the accounting and disbursement information provided verbally to him by Nevares," and that "Nevares either knew or should have known that the information was not correct at the time he made the foregoing material representations to Quetglas." Id. at p. 7. According to Quetglas, "[h]ad [he] known that the foregoing information was not accurate or correct Quetglas would not have entered into referenced agreement," and therefore the fee agreement is "null and void" and he "is entitled to receive from

Civil No. 16-1333 (FAB)                                              5

Nevares and Salas the balance owed to him of his share in the fees produced by the Cruz-Aponte action on the basis of work performed or *quantum meruit*." Id. at pp. 7-8.

On Decemeber 22, 2018, Quetglas filed a motion for summary judgement against the defendants. (Docket No. 267.) Four days later, the defendants filed a cross-motion for summary judgment against Quetglas and Parker. (Docket No. 269.)

## II. Jurisdiction

The Court has jurisdiction over this civil action because the dispute is between citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs. See 28 U.S.C. § 1332(a)(1).

## III. Standard of Review

A court will grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation." Dunn v. Trs. of Bos. Univ., 761 F.3d 63, 68 (1st Cir. 2014) (internal citation omitted).

The role of summary judgment is to "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine

whether trial is actually required." Tobin v. Fed. Exp. Corp., 775 F.3d 448, 450 (1st Cir. 2014) (internal citation omitted). The party moving for summary judgment has the initial burden of "demonstrat[ing] the absence of a genuine issue of material fact" with definite and competent evidence. Celotex, 477 U.S. at 323; Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). The movant must identify "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any'" which support its motion. Celotex, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).

Once a properly supported motion has been presented, the burden shifts to the nonmovant "to demonstrate that a trier of fact reasonably could find in [its] favor." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (internal citation omitted). "When the nonmovant bears the burden of proof on a particular issue, [he or] she [or it] can thwart summary judgment only by identifying competent evidence in the record sufficient to create a jury question." Tobin, 775 F.3d at 450-51. A court draws all reasonable inferences from the record in the light most favorable to the nonmovant, but it disregards unsupported and conclusory allegations. McGrath v. Tavares, 757 F.3d 20, 25 (1st Cir. 2014).

When parties file cross-motions for summary judgment, a court must "consider each motion separately, drawing all inferences in favor of each non-moving party in turn."  AJC Int'l, Inc. v. Triple-S Propiedad, 790 F.3d 1, 3 (1st Cir. 2015) (internal quotation marks and citation omitted).  "Cross-motions for summary judgment do not alter the summary judgment standard, but instead simply 'require [the Court] to determine whether either of the parties deserves judgment as a matter of law on the facts that are not disputed.'"  Wells Real Estate Inv. Tr. II, Inc. v. Chardón/Hato Rey P'ship, 615 F. 3d 45, 51 (1st Cir. 2010) (citation omitted).

## IV. Applicable Law

The Court applies Puerto Rico contract law to this diversity suit.  See Quality Cleaning Prod. R.C., Inc. v. SCA Tissue N. Am., LLC, 794 F.3d 200, 204 (1st Cir. 2015) ("Federal courts sitting in diversity apply the substantive law of the state and, pursuant to statute, Puerto Rico is treated as a state for diversity purposes.").  Article 1473 of the Puerto Rico Civil Code governs

actions based on *quantum meruit*. Pérez-Marrero, 131 D.P.R. at 557 (citing P.R. Laws Ann. tit. 31, § 4111).[5]  Article 1473 states,

> Professional services, as regards the remuneration therefor, shall be subject to the agreement of the parties; and where there is no agreement as to remuneration, and a disagreement should arise respecting the same, the party entitled to such remuneration may sue and recover from the adverse party the reasonable value of such services in any court of competent jurisdiction.

P.R. Laws Ann. tit. 31, § 4111.  Pursuant to *quantum meruit* doctrine, attorneys are thus "entitled to receive reasonable compensation" for their rendered professional services. Pérez-Marrero, 131 D.P.R. at 559.  "In the absence of an explicit pact, the Courts are called upon to set the reasonable value of the services rendered." Comité Pro Defensa Ambiental v. Compañía de Aguas, 2009 WL 4059966, *2 (P.R. Cir. Aug. 27, 2009) (citing Méndez Rodríguez v. Morales Molina, 142 D.P.R. 26 (P.R. 1996)) (official

---

[5] In contrast to the United States common law system, where law is developed through judicial decisions with precedential authority, Puerto Rico contract law follows a civil law system, where core principles are codified and the code serves as the primary source of law. See generally, Liana Fiol Matta, Civil Law and Common Law in the Legal Method of Puerto Rico, 40 Am. J. Comp. L. 783 (1992).  Puerto Rico judicial opinions resolving contract disputes do not bind subsequent contract cases. See generally, David C. Indiano, Federal District Court in Puerto Rico: A Brief Look at the Court and Federal Handling of Commonwealth Civil Law in Diversity Cases, 13 Case W. Res. J. Int'l L. 231 (1981).  Accordingly, in applying the Puerto Rico Civil Code, the Court sets forth two distinct, yet coexisting ways in which Puerto Rico judges have construed *quantum meruit* doctrine. See id.  One application focuses on services rendered, while the other interpretation centers on "unjust enrichment."  Compare Fernández-Sánchez, 2002 WL 31661971 (TCA), at *4 (official translation at Docket No. 222, Ex. 1 at p. 30) with Ramos-Rivera v. González-Hernández, 2014 WL 7398737, at *6 (P.R. Cir. Oct. 31, 2014) (official translation at Docket No. 226 at p. 3).

translation at Docket No. 222, Ex. 1 at p. 14).  To determine the reasonable value of the services rendered,

> the courts may take into account the following factors: (1) the difficulty and complexity of the issues involved; (2) the time and work required; (3) the fees that are usually charged in the judicial district for similar services; (4) the experience and prestige of the attorney.

Fernández-Sánchez, 2002 WL 31661971 (TCA), at *4 (citing Pérez-Marrero, 131 D.P.R. at 562 n.14) (official translation at Docket No. 222, Ex. 1 at p. 30).

Ultimately, "[t]he principle of *quantum meruit* or reasonable value is based on the doctrine of unjust enrichment and 'is used when dealing with an implicit obligation that arises when there does not exist a valid agreement between the parties.'"  Ramos-Rivera, 2014 WL 7398737, at *6 (citing Danosa Caribbean v. Santiago Metal, 179 D.P.R. 40, 61 (P.R. 2010)) (official translation at Docket No. 226 at p. 3).  *Quantum meruit* "means 'as much as deserved,'" and "[b]eing a principle based on the doctrine of unjust enrichment, it is relevant to refer to what the [Puerto Rico] Supreme Court has stated regarding" unjust enrichment: that "not applying [the doctrine] would perpetuate the inequity of someone unfairly enriching him or herself to the detriment of another."  Id. at *7 (citing Collazo Vázquez v. Huertas Infante,

171 D.P.R. 84, 139 (P.R. 2007)) (official translation at Docket No. 226 at p. 3).

Article 1258 governs the "[r]estoration of objects of contract" when the failing clause does not constitute a "crime or misdemeanor." P.R. Laws Ann. tit. 31, § 3517. According to Article 1258:

> If the fact of which the illicit consideration consists does not constitute either a crime or misdemeanor . . . when only one of the contracting parties is guilty, he cannot recover what he may have given by virtue of the contract, nor demand the fulfilment of what may have been offered him. The other party, who has had nothing to do with the illicit consideration, may reclaim what he may have given without being obliged to fulfill what he has offered.

Id.

**V.   Discussion**

The defendants' and Quetglas' motions for summary judgment are unavailing because Parker's and Quetglas' *quantum meruit* claims and Quetglas' Article 1258 claim raise genuine issues of material facts. See Dunn, 761 F.3d at 68. The parties' statements of uncontested facts and supporting exhibits reveal discrepancies regarding material questions of fact reserved for the jury. See Docket Nos. 268, 289, 290, 292, 295; Docket No. 267, Ex. 2; Docket No. 283, Ex. 1. For example, the defendants assert that "[t]he 326 Quetglas' [sic] clients in the CAPECO Litigation received net settlement proceeds in the total and

aggregate amount of $341,747.99," see Docket No. 268 at p. 5, while Quetglas maintains that the defendants fail to include "at least 28 of Quetglas [sic] clients." (Docket No. 283, Ex. 1 at p. 9.) The parties submit supporting evidence to substantiate their own contentions and accuse each other of relying on "self-serving evidence." See Docket No. 289 at p. 5, Docket No. 292 at p. 1. Ultimately, the parties request that the Court render credibility determinations to resolve the case.

The Court refuses to encroach on the domain of the jury. "It is the jury, not the court, which is the fact-finding body." Landrum Mills Hotel Corp. v. Ferhatovic, 317 F.2d 76, 77 (1st Cir. 1963). It is the jury's role to "weigh[] the contradictory evidence and inferences, judge[] the credibility of witnesses, receive[] expert instructions, and draw[] the ultimate conclusion as to the facts." Id. The "very essence" of the jury's function "is to select from among conflicting inferences and conclusions that which is considers most reasonable." Id. Evidence as to the extent of Quetglas' and Parker's services, for example, "is such that a reasonable jury could resolve the point in the favor of the non-moving party" and "has the potential of determining the outcome of the litigation." See Dunn, 761 F.3d at 68. A reasonable jury could find any of the parties' testimony credible and award compensation accordingly.

**VI. Conclusion**

For the reasons stated, Quetglas' motion for summary judgment (Docket No. 267) and the defendants' cross-motion for summary judgment (Docket No. 269) are **DENIED**.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, August 12, 2019.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE
